PARLIAMENT IMPORT COMPANY

v.

GIBSON WINE CO., INC. and
William A. Boos.

Civ. A. No. 81–2701.

United States District Court,
E. D. Pennsylvania.

Jan. 15, 1982.

Ronald L. Panitch, Seidel, Gonda, Goldhammer & Panitch, Philadelphia, Pa., for plaintiff.

William H. Elliott, Synnestvedt & Lechner, Philadelphia, Pa., George M. Schwab, Townsend & Townsend, San Francisco, Cal., for defendants.

MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Parliament Import Company ("Parliament") brought this action against the defendants, Gibson Wine Co., Inc. ("Gibson") and William A. Boos ("Boos"), pursuant to 15 U.S.C. § 1501 and 28 U.S.C. § 1391, alleging trademark infringement. Presently before the court is a motion of defendant Gibson, pursuant to 28 U.S.C. § 1406(a) to dismiss this action for improper venue, or transfer it to the Eastern District of California where venue is proper, or in the alternative, pursuant to 28 U.S.C. § 1404, to transfer it to the Eastern District of California for the convenience of parties and witnesses. Boos joins in the motion for transfer. For the reasons which follow, the motion is denied.

The facts can be summarized as follows. The plaintiff is a Pennsylvania corporation, selling wine under the registered trademark name of "Chantefleur." The defendant Gibson is a California corporation which processes grapes into wines and champagnes, which it later bottles, labels, and ships, all from its California facilities. This lawsuit is based upon Gibson's sale and shipment of champagne under the "Chatelour" mark to the Pennsylvania Liquor Control Board.

28 U.S.C. § 1391 provides in pertinent part:

(b) A civil action wherein jurisdiction is not found solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Gibson argues that venue in this district is improper, because venue must be found by virtue of the fact that the claim arose in Pennsylvania or that Gibson is doing business in Pennsylvania, and neither test is met in the case *sub judice.*

We shall first examine the test of "where the claim arose." A cause of action for trademark infringement arises where the passing off occurs. *Tefal, S. A. v. Products International Co.,* 529 F.2d 495, 496, n.1 (3d Cir. 1976); See: *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 663 (2d Cir. 1956), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Gibson argues that this test fails because it has not sold one bottle of "Chatelour" champagne in this district, and that it has sold only one case of the champagne to the Pennsylvania Liquor Control Board in Western Pennsylvania. However, 15 U.S.C. § 1114(1)(a) ("The Lanham Act") provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . .

Thus, the amount of a sale is immaterial under the statute, but, rather, offering for sale, distribution, or advertising are sufficient to provide a basis for jurisdiction. Plaintiff's complaint states that the defendants have offered for sale, wine under the trademark "Chatelour" in the United States. (See paragraph 35 of the complaint).

Gibson relies on *Honda Associates Inc. v. Nozawa Trading Inc.,* 374 F.Supp. 886 (S.D.N.Y.1974) for the proposition that a claim should not be deemed to have arisen in a district in which a defendant has had only miniscule contact. Gibson claims that its contact in Pennsylvania is very miniscule since it sold only one case of "Chatelour" champagne in Pennsylvania, and that in the Western District. However, defendant Gibson in Exhibit B attached to its answers to plaintiff's first set of interrogatories, sets forth that it has sold in excess of $126,000. of its products to a company in Pennsylvania, and in excess of $400.00 to the Pennsyl-

vania Liquor Control Board, from the years 1977 to 1981 inclusive. We find that these are not miniscule contacts as defined in *Honda*. The *Honda* test was adopted by this court in *True Form Foundations, Inc. v. The Strouse Adler Company*, 203 USPQ 1081 (E.D.Pa.1981). *Honda* is distinguishable from the case *sub judice*. In *Honda*, the defendant's only contacts with New York over a four year period were three mail orders shipped from California, the defendant conducting no other business in New York. Here, Gibson has transacted over $126,400.00 worth of sales of its products in Pennsylvania over a four year period.

The next test to be examined is "doing business." Gibson alleges that its only business activities in Pennsylvania constitute the shipment of wine F.O.B. its California facility to its private label customer in Pennsylvania. Gibson relies on *Philadelphia Housing Authority v. American Radiator and S. San. Corp.*, 291 F.Supp. 252 (E.D. Pa.1968) and *Watson McDaniel Company v. National Pump and Control, Inc.*, 493 F.Supp. 18 (E.D.Pa.1979), for the proposition that in this district, far more contacts are required to establish "doing business" under the venue statute than would be required to obtain personal jurisdiction. Gibson argues that since its business activities do not require a license in Pennsylvania, it cannot be held to be "doing business" here. We do not agree. In *Philadelphia*, the court applied the test set forth in *Remington Rand, Inc. v. Knapp-Monarch Co.*, 139 F.Supp. 613, 617 (E.D.Pa.1956). The *Remington* test for "doing business" under § 1391(c) is:

> "In determining how much activity within a district a foreign corporation must engage before such activity will constitute 'doing business' for purposes of federal venue, the basic consideration is whether a license would be required of the foreign corporation as a condition precedent to carrying on that activity. However, it would be erroneous to make the propriety of venue dependent upon the licensing law of any one particular state, since determination of the correctness of plaintiff's choice of locality for his

law suit against a corporate defendant necessarily envisages application of a uniform federal standard. At the same time, a test for 'doing business' which requires examination of the laws of all the states to determine whether any one state might require a license on the basis of the activity engaged in would be a useless yardstick."

The *Remington Rand* court went on to say: "[A] corporation will be held to be 'doing business' for purposes of § 1391(c) if its activities within the district are such that its business has become localized and is an operation within the district so that some state would probably require the foreign corporation to be licensed as a condition precedent to doing that business...". (*Remington Rand*, at pages 620–1).

Thus, the test under *Remington Rand*, is not whether Pennsylvania requires a license, but whether some states would require it. The *Remington Rand* test has been criticized in *Smith v. Avco-Lycoming*, 497 F.Supp. 622, 624–625 (E.D.Pa.1980) where the court stated:

> "I find the *Remington Rand* test a rather amorphous one to apply, and note that has never been adopted by the Court of Appeals. Moreover, the general theory propounded in *Remington Rand*, that contacts with the forum state must be more substantial to support venue than to support jurisdiction, has been subject to scholarly criticism as being incongruous."

We find that the defendant Gibson had sufficient contacts with Pennsylvania to satisfy the venue requirement. Gibson has sold more than $126,400.00 worth of its products in Pennsylvania. We therefore deny the motion of Gibson to dismiss.

Gibson in the alternative has requested that the action be transferred to the Eastern District of California pursuant to 28 U.S.C. § 1404 for the convenience of parties and witnesses. Section 1404(a) provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Gibson asserts that it has no facilities here, and operates entirely out of its California office and a small office in Ohio. Gibson also asserts that all sources of proof are located in California and districts other than Pennsylvania, and that no witnesses reside or work in this district. Another consideration set forth by Gibson to warrant transfer is an allegation that Gibson's California attorney has been informed that the average time between filing of an action and trial of the action in the Eastern District of California is twelve months, whereas there would be a much greater delay in this district. The Court does not know the basis for this allegation, but wants to assure the parties that the Eastern District of Pennsylvania's median time between filing of an action and trial of the case is below the national average and considerably below the Eastern District of California.[1] The complaint herein was filed on July 7, 1981, and but for the delay of this motion, this case would have been tried. The Court assures the parties that there will be no further delay.

 In acting on a motion to transfer, the district court is vested with wide discretion in weighing all relevant factors to determine if, on balance, the action would proceed more expeditiously and the ends of justice would be better served if the transfer is effected. *Zerance v. William Harvey Research Corp.*, 401 F.Supp. 804 (E.D.Pa. 1975); *see, Plum Tree, Inc. v. Stockment*, 488 F.2d 754 (3d Cir. 1973). Thus, exercise of the court's power to transfer under § 1404 is committed to the sound discretion of the district court, to be exercised in light of all the circumstances of the case. *American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254 (W.D.Mo.1980). It is therefore not an abuse of discretion for a district court to refuse transfer when the factors supporting a change in venue are outweighed by other more compelling circumstances. *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir. 1978). Ordinarily, great weight is given the plaintiff's choice of forum. *See, e.g., Shutte v. Armco*

*Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

In this case, neither the alleged inconvenience of parties nor of the witnesses can dictate a change of venue, especially when weighed against the deference to be accorded the plaintiff's choice of forum. Where the transfer would merely shift inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum will not be disturbed.

We therefore deny Gibson's motion to transfer.

---

1. Management Statistics For United States Courts 1981.